ALEXANDER YOUNG *et al.*, plaintiffs in error, *vs.* JOHN LORAIN *et al.*, defendants in error.

### *Error to Jo Daviess County Court.*

Prior to the passage of the act of the 13th of April, 1849, a guardian could not, as a matter of right, resign his trust. Still, when, previous to the passage of said act, a guardian tendered his resignation of his guardianship to the Probate Court, which resignation was accepted by the Court, and his letters of guardianship were revoked, and another guardian appointed in his place, held, that the validity of such revocation, and the appointment of another guardian, could not be collaterally called in question. The Court of Probate had the power to remove the guardian, for good and sufficient reason, and, admitting, that upon an appeal, the sufficiency of the reasons of the removal might be inquired into, yet, in a collateral action, this Court cannot pronounce them insufficient. The Probate Court had jurisdiction, and its judgment upon the sufficiency of the reasons for the removal is binding, however erroneous, until it is reversed.

When the Probate Court appointed a guardian to two orphan minors, under the age of fourteen years, for the full time until they should respectively attain the age of eighteen years,

Young *et al.* *vs.* Lorain *et al.*

held, that the appointment was valid. And, admitting that the said minors might, under the statute, when they arrived at the age of fourteen years, choose a guardian for themselves, who would supersede the guardian so appointed by the Probate Court, still, in the event of their neglecting or refusing to choose a guardian for themselves, at the proper age, the guardian already appointed by the Probate Court would continue to act in his office until the said minors attained their majority.

In order to give the Circuit Court jurisdiction, to order the sale of the real estate of a ward, on the application of his guardian, under the tenth section of the act relative to guardian and ward, it must appear on the face of the record or proceeding itself, that the contingency provided for in said section existed, which authorized the Court to proceed under it and make the order. Hence "the inquiry is not whether the proof was sufficient, but was such a case presented to the Court, as called upon it, under the statute, to act, to deliberate and to decide?" "Was its aid properly invoked?" If so, then the Court acted within its jurisdiction, and every presumption is in favor of its judgment. Indeed, nothing can be alleged against it in a collateral proceeding.

Where the guardian avers in his petition, "that no personal property of the wards had ever come to his hands," held, that this departure from the expressions of the statute was not fatal to the jurisdiction of the Court, although the averment was somewhat equivocal. Held, also, that all objections taken to the notices of the sale, posting them, and other matters involved in the adjudication of the Circuit Court, either in granting the original order of sale, or in the final order, confirming the report of the guardian, could avail nothing in this collateral action.

Where there were ambiguities in the conveyance executed by the guardian, in the description of the grantees, and also in omitting the number of the block, in describing the premises, held, that parol evidence was competent, in both cases, to remedy the defect. Held, also, that a subsequent deed, executed by the said guardian, for the purpose of explaining the first deed and correcting the mistakes therein, was improperly admitted in evidence, as it amounted, at most, only to the declarations of the said guardian, made some years after the transaction, and when he could not, by such declarations, affect the interests of his wards. His power was exhausted when he had made the sale and conveyance, and his acts were approved by the Court.

Where a ward subsequently acquires from the government of the United States a patent to the premises which had been sold by his guardian, at a guardian's sale, under the statute, held, that his independent title, subsequently acquired, did not inure to the benefit of a previous purchaser at a guardian's sale; nor was he estopped by the guardian's deed from setting up such subsequent title. Held, also, that the guardian could not insert any covenants in the deed, which would be binding on his ward. If the guardian chooses to insert covenants in the deed, he may be held personally responsible upon them; and to him alone must the grantee look.

This suit was commenced in the Circuit and taken by change of venue by consent to Jo Daviess County Court. Heard before Hugh T. Dickey, Judge, and a jury, at January term, A. D. 1850. Declaration with three counts. The first count sets forth the seizin in fee of said Alexander Young and Elizabeth his wife, of the one undivided half, in the right of the said wife, of the north half of lot five, and south half of lot six, both in block twenty-nine, on the east side of Fevre river, in the city of Galena, county of Jo Daviess, and state of Illinois; and also the seizin in fee of said Julia Ann Bates, of the one undivided half of said north half and south half of said lots five and six— dispossession by the defendant, and unlawful withholding, &c. The second count is a several count, by Young and wife, setting forth the possession of the one undivided half of said north half of lot five and south half of said lot six, by said Young and wife— a dispossession and withholding by the defendant; that the said Young and wife claim the said undivided half of said lots in fee,

79

in right of the said wife, Elizabeth. The third count is a seve-
ral count, by Julia Ann Bates, setting forth the possession of the
one undivided half of said north half of lot five and south half
of said lot six, by said Julia Ann Bates—a dispossession and with-
holding by defendant; that said Julia Ann claims the one undi-
vided half of said north half of said lot five and south half of lot
six in fee.

Plea of the general issue and *similiter*. Francois Marchildon
made a party, by a suggestion of his marriage with Julia Ann
Bates.

Evidence on the part of the plaintiff showed a patent from
the United States, granting to Elizabeth and Julia Ann Bates,
heirs at law of Nehemiah Bates, deceased, according to the act
of Congress, &c., said north half of lot number five and south
half of said lot six, in block number twenty-nine, among other
lots ; which said lots had been purchased by said Elizabeth and
Julia Ann, and granted to said E. and J. A., their heirs and as-
signs forever, as tenants in common, and not joint tenants. Pat-
ent dated 12th September, 1845 ; which was admitted by the
Court as evidence. Proof was introduced, showing that Eliza-
beth Young and Julia Ann Marchildon were the heirs at law of
Nehemiah Bates.

Defendant's counsel then admitted that said halves of said lots
five and six, at the time of the service of the declaration and
notice, were vacant and unoccupied lots, and claimed by defen-
dant in fee simple.

On part of defendant, Richard Seal testified—he is clerk of
the County Court of Jo Daviess county—keeper of the records
of the Probate Court. He produced one of the records of said
late Probate Court, of its acts, &c., and testified that the entries
on pages seventy-one and seventy-two were in the handwriting
of Elijah Charles, who was probate justice during the year 1840,
and at date of said entries on pages seventy-one and seventy-
two, signed " Elijah Charles ; " that said signature is the proper
signature of said Charles; that said Charles is now deceased.
Defendant offered in evidence said entry ; which is as follows,
to wit :

" At a special term of the Court of Probate, held at the court
house, in Galena, and county of Jo Daviess, and state of Illinois,
on the 23d day of May, 1840, the following proceedings were

had, to wit: Present Elijah Charles, probate justice of the peace in and for said county. Robert B. McDowell, heretofore appointed guardian for Elizabeth and Julia Ann Bates, minor heirs of Nehemiah Bates, deceased, personally appeared in open Court, and tendered, in writing, the following resignation: To Elijah Charles, probate justice of the peace in and for the county of Jo Daviess, and state of Illinois: Sir—I this day resign the office of guardianship for Elizabeth and Julia Ann Bates; and whereas, the Court having accepted said resignation, and revoked the letters heretofore granted to said McDowell, and it appearing to the satisfaction of the Court that the said minors are possessed of real estate, do therefore appoint Thomas Drum guardian for said Elizabeth and Julia Ann. Said letters are in words and figures, to wit:

" State of Illinois, ⎱ ss.
Jo Daviess county, ⎰

" The people of the state of Illinois to Thomas Drum of said county, greeting: Whereas Robert B. McDowell, guardian for Elizabeth Bates, of the age of eleven years, in February last, and Julia Ann Bates, of the age of nine years, minor heirs of Nehemiah Bates, deceased, has on this day filed in the office of Probate Court his resignation as such guardian; and the said Court having accepted said resignation, and revoked the letters heretofore granted to said McDowell, do, therefore, hereby appoint you guardian of the said Elizabeth and Julia Ann Bates, persons and property, until they shall arrive at the age of eighteen years. Witness, Elijah Charles, probate justice of the peace in and for said county, at his office, in Galena, this the 23d day of May, A. D. 1840.

" ELIJAH CHARLES, *Probate J. P.*"

To the admission of this entry the plaintiff's counsel objected; which objection the Court overruled, and plaintiffs excepted. Defendant offered and read in evidence a bond, executed by said Drum, as guardian, with sureties, in the penal sum of $5000, dated 23d May, 1840, conditioned for faithful discharge of office and trust of guardian, &c., &c. The defendant then offered evidence that notice of sale was printed in four numbers of the Galena Sentinel, the first insertion on 11th February, 1843, and the last 11th March, 1843. The notice was dated Galena, Feb-

ruary 14th, 1843, and set forth that Drum was guardian of said Elizabeth and Julia Ann, minors ; that they were seized of certain lots and parcels of land, and among them said lots number five and six, in said block twenty-nine; it was necessary for the support and education of said wards, and would be conducive to their interests, to have said lots or some portion of them sold; that it was his intention to petition the Circuit Court, at Galena, on second Monday of March, then next, for license and authority to sell the same, or so much as should be necessary for their support and education.    To the admission of which notice and certificate the plaintiffs' counsel objected; which objection was overruled, and the notice and certificate admitted ; and plaintiffs excepted.

The defendants then offered in evidence a petition, signed " Thomas Drum, guardian," addressed to the Associate Justice of Supreme Court and Judge of the Circuit Court, &c., which represented and set forth that said Drum was guardian of said Elizabeth and Julia Ann Bates, minors, &c., by the appointment of the probate justice for said county ; that his said wards were each seized of an undivided half of certain tracts of land, (describing them, and, among others, the said lots five and six, in block twenty-nine ;) that said Drum was so appointed guardian on the 22d May, 1840; "that at the time of his said appointment, nor at any time before or since, had there come into his hands or possession any personal property of said wards ; " that from time to time since said appointment, said petitioner had advanced moneys for the support, maintenance and education of said wards, as appears by account annexed ; that they were then indebted to him for such moneys ; that there was no money, personal property, or means in his hands, for the support, maintenance and education of said wards ; that it is necessary for their support and education, and will be conducive to their interests to sell said lots or part of them ; that notice had been given to all concerned, by publication in the Galena Sentinel, printed in Galena, for three weeks, successively, before the sitting of the Court—certified copy annexed : Wherefore he prays the Court to order a sale of said lots, or as many as shall be deemed necessary by said petitioner, for the support and education of said wards ; and that petitioner, on making sale, at such time and place, and on such terms as this Court shall order, be authorized to convey the same to the purchasers, by good and

sufficient deeds, according to the statute in such case made and provided. Signed "Thomas Drum." To the admission of which petition, the plaintiffs' counsel objected; which objection was overruled by the Court, and the plaintiffs' counsel excepted. Defendants' counsel offered in evidence an entry in said record of said Circuit Court, at its March term, 1843, setting forth that Thomas Drum, guardian, &c., came, &c.; that proof of publication had been filed according to law, and the Court being satisfied as to the facts stated in said petition, and that there were just and reasonable causes for the sale of the real estate therein described, ordered and decreed that said Drum, guardian, &c., should sell at public sale the lots or tracts of land mentioned in said petition, belonging to said wards, (setting forth a number of lots, and among them said lots number five and six, in block twenty-nine,) or so many of said lots as might be deemed necessary or expedient by said guardian, for the purpose set forth in said petition, on Saturday, 22d April, then next, between nine o'clock in the morning, and six in the afternoon of said day, to the highest bidder. Notice to be given by guardian in a newspaper in Galena, for three weeks successively; the last publication to be at least ten days before the sale. Sale to be on the premises. Terms : one-third of purchase money cash, one-third in six months, one-third in twelve months, with interest from date of sale; the purchasers to execute a mortgage, on the premises sold, to said guardian, for security for notes taken for balance. The petitioner being authorized to execute, acknowledge and deliver good and sufficient deeds for the premises sold, conveying all the right and title of his said wards. And it is further ordered, that he make a return of his doings in this behalf to the next term of this Court. To the admissibility of which, the plaintiffs' counsel objected. The objection was overruled, and the plaintiffs' counsel excepted.

Plaintiffs admitted that Elizabeth and Julia Ann were residents of Galena, at the time of the presentation of said petition and order of sale, and waived proof thereof.

The defendants then offered in evidence a printed notice and certificate of H. C. McGrew, publisher of the Galena Sentinel; that said notice had been published in said paper, printed in Galena, for three weeks in succession, in three different numbers of said paper—the first, March 17th, 1843—the last, April 8th,

1843; which said printed notice was headed "Guardian's Sale," dated March 16th, 1843, and signed " Thomas Drum," reciting that, by virtue of a decree of the Circuit Court of Jo Daviess county, Illinois, at March term, 1843, the undersigned, Thomas Drum, guardian of E. and J. A. Bates, minors, &c., would sell at public sale, on Saturday, 22d April, then next, between the hours of nine o'clock A. M. and six P. M., on the premises, to the highest bidder, all the right and title of his said wards in and to property described, and, amongst others, the said north half of lot number five, and south half of lot number six, both in block number twenty-nine, east of Fevre river, Galena, Illinois, for the purposes set forth in the petition to said Court. To the admission of this notice, &c., plaintiffs' counsel objected; which objection was overruled by the Court, and plaintiffs' counsel excepted.

The defendants then offered in evidence the return of said Drum of said sale, in words and figures, which was entitled, " In the matter of Thomas Drum, guardian of E. and J. A. Bates, minors, &c., on petition for sale of real estate. In Circuit Court, to the October term, A. D., 1843;" which recites the order of Court hereinbefore set forth, and that in pursuance thereof, said Drum sold at public sale, 22d April, 1843, between nine A. M. and six P. M., on the premises, to the highest bidder, the real estate set forth in the petition and order—giving the names of purchasers, numbers of lots, and amount bid—among others, as follows : " Lorain & Co., the north half of lot five, in block twenty-nine, for $ 135; Lorain & Co., the south half of lot six, in block twenty-nine, for $ 115." That notice of time and place had been given, &c., and a printed copy of the notice and certificate of printer annexed, and marked " A," hereinbefore set forth; that the terms were the same hereinbefore last mentioned ; that said terms were complied with by each purchaser, as aforesaid, and that deeds were executed, &c., to purchasers, for premises purchased, conveying all the right of said wards ; and that said Drum prayed the Court to accept and approve of said return and report of his proceedings, and to order it to be recorded according to statute in such cases made and provided. Signed, " Thomas Drum, guardian," and filed October 28th, 1843. Which return was objected to; which the Court overruled, and plaintiffs' counsel excepted.

Defendants then offered, in evidence, two entries on the records of the Circuit Court—one made at June term, 1843, and the other at October term, 1843. Entry of June term, 1843, recites the filing by said Drum of a motion to extend the time for reporting his proceedings in this matter to the next term of Court, as follows: " Now at this day came the petitioner, by his attorney, and presented a report of the proceedings in this behalf; which is accepted by the Court, and ordered to be filed, and is in words and figures following, to wit :" (Reciting the return verbatim—the contents are given above.) To last entry plaintiffs objected. Objection overruled, and plaintiffs excepted.

Defendants then proved that defendants, on the 22d of April, 1843, and before and after, composed the firm of Lorain & Co.

The defendants then offered in evidence the following deeds, &c.: " Thomas Drum, guardian, to Lorain & Co."—Deed dated 22d April, A. D. 1843; acknowledged 3d May, 1843, and recorded May 24th, 1843. Recites order of Court, notice of sale, and sale of the said minors' right, title and interest in north half of lot five and south half of lot six, being a sale of all the right and title of said minors; special warranty against all persons claiming under said Drum, in his capacity aforesaid; signed, " Thomas Drum, (seal.)" No block is mentioned in this deed.

In connection with and explanatory of said deed, defendants offered in evidence : First, a mortgage, as follows : " John Lorain and Shewell S. Lorain, partners, under the style of Lorain & Co. to Thomas Drum"—Dated 22d April, 1843; acknowledged 4th May, 1843 ; recorded May 13th, 1843—consideration $ 166 66—north half lot number five and south half lot number six, in block twenty-nine—conditioned to secure $ 166 66, with interest, in manner specified in two promissory notes, for $ 83 33 each, one payable in six months, and one in twelve months. Second, an entry on record of mortgages of recorder's office of Jo Daviess county, of mortgage last above ; and the following marginal note : " Know all men, that I hereby acknowledge payment and satisfaction in full of the within mortgage, and do hereby declare the same cancelled, and of no further force or effect whatever. Galena, May 23d, 1844. Thomas Drum." Signed with the proper and genuine signature of

Thomas Drum. Drum at time of trial was dead. Third, " Thomas Drum to John Lorain and Shewell Lorain"—Deed, dated 23d January, 1847; acknowledged 28th January, 1847; recorded 2d February, 1847. This deed is like the first from Drum to Lorain & Co., and names the block twenty-nine. Recited this deed to be a correction of that deed, as to the said block and the individual names of the grantees.

To the first named deed from Drum to Lorain & Co., plaintiffs objected. The mortgage was objected to by plaintiffs' counsel. The said entry in said record of mortgages was objected to. The marginal memorandum, signed Thomas Drum, was objected to. The said second deed by said Drum to said John and Shewell Lorain, dated 1847, was objected to. Each and all of which objections to said deeds, mortgages, entry and marginal memorandum, were overruled—plaintiffs excepting.

Plaintiffs then produced a witness, who testified that he was clerk of the Circuit Court in and for Jo Daviess county, Illinois, and had been for about ten years; that there were no other papers on file, nor had been in his office, to his knowledge, in the matter of the said application of said Drum for the said sale of said realty, except: First, the petition, signed Thomas Drum, above described, and the contents given; second, printed notice, signed Thomas Drum, and certificate of printer, above set forth, and contents given; third, motion by said Drum, at the June term, 1843, for an extension of the time for the return of said proceeding till next term; fourth, the return described above; fifth, the printed notice, signed Thomas Drum, and certificate of printer.

Hoge & Wilson, for plaintiffs in error.

Thompson Campbell, for defendants in error.

Opinion by Mr. Justice Caton:

We will dispose of the questions arising in this case, in the order in which they have been presented upon the argument. On the 23d of May, 1840, Mr. McDowell, the former guardian of Elizabeth and Julia Ann, presented to the Probate Court a resignation of his guardianship, which that Court accepted, and revoked his letters of guardianship, and appointed Thomas Drum

guardian of the same wards. It is objected that the former guardian had no right to resign; that the Probate Court could not legally accept his resignation and appoint a successor, and that hence the appointment of Drum was a nullity. It may be admitted, that until the passage of the law of the 13th of April, 1849, a guardian could not, as a matter of right, resign his trust; nor, it is most probable, would the mere acceptance of the resignation, of itself, vacate the office. But we think that under the power given by the seventh section of chapter forty-seven, of Revised Statutes, the Court might consider a resignation a sufficient cause for removal. That section provides, that "the Court of Probate, in all cases, shall have power to remove guardians, for good and sufficient reasons, which shall be entered on record, and to appoint others in their place," &c. Now it may be well to remember, in the outset, that the objections which are presented to the action of the Probate Court, as also of the Circuit Court, are urged in a collateral proceeding, and not upon an appeal to reverse those orders and proceedings. That the Court of Probate had power to remove the guardian, for good and sufficient reason, is clear, for it is so expressly written; but the statute does not specify any particular reasons, but leaves the sufficiency of the cause with that Court. Admitting that upon an appeal the sufficiency of the reasons might be inquired into, yet, in this collateral action, we are certain that we cannot pronounce them insufficient. That Court had jurisdiction to remove, and was called upon to exercise its judgment, on the sufficiency of the reasons for the removal; and its judgment is valid and binding, until it is reversed, no matter how erroneously the Court may have judged in the exercise of its jurisdiction. The Probate Court considered the resignation sufficient cause for the removal, for immediately it proceeded to revoke the letters of guardianship, which necessarily operated as a removal of the guardian. The appointment of Drum was made in a proper case, and he was a legal guardian, unless the other objections to his appointment shall be sustained.

At the time of Drum's appointment, one of the wards was nine and the other eleven years of age, and his letter of appointment expressed to be for the full term, until they should respectively attain the ages of eighteen years. It is objected, that here was an excess of jurisdiction, exercised by the Probate

Court, and for that reason the appointment was void. Were we to admit that the guardianship of one who is appointed while the ward is within the age of choice, cannot continue beyond that period, still we do not think it would entirely vitiate the appointment, because it professed to be for too long a time. Within the time for which he might have been appointed, his acts would be good. It is not like the case of a lease made by a guardian of the ward's estate, for a longer term than he had authority to lease it. In such case, the lease might be void, as being in express violation of the law; and there is a manifest reason why it might not be binding; for the entire term would enter into and constitute one of the principal moving considerations for the tenancy. When void for a part of the term, it might well be considered of no validity. But no such consideration enters into the appointment of a guardian. The letter of appointment might fix its duration, until it should be revoked; and yet, because that might never happen, it would be unreasonable to say that the appointment was good for nothing. That objection, at least, is untenable. Now let us see whether the appointment necessarily ceases when the ward arrives at the age of choice. This appointment was made under the first section of our statute which provides : " Courts of Probate, in their respective counties, shall admit orphan minors, above the age of fourteen years, the father being dead, to make choice of guardians, and appoint guardians for such as are under the age of fourteen years." The next section requires the Court of Probate, when informed that there is a minor within the county, over fourteen years of age, without a guardian, to notify the infant to appear and choose a guardian; and if he refuses to do so, the Court shall appoint one for him, the same as if the minor were under that age. The question in this case arises under the first section, and it might admit of a reasonable doubt, whether the right of choice is given to a minor, after he arrives at the age of fourteen, if he then has a guardian holding under a previous appointment. The statute certainly does not limit the appointment to that time, nor does it say that after that time the minor may choose another guardian in place of the former. However, as the statute was framed upon the supposition that, at the age of fourteen, the minor is of sufficient discretion to choose a guardian, and as that discretion would not be likely to be im-

paired by his having a guardian before that time, we may con-
sider it a part of the policy of the law to allow minors, in all ca-
ses, to make choice of guardians, after that time.   But there is
no intimation that, until that right is exercised, the former ap-
pointment shall be superseded.    But the reverse may be fairly
intended, from the expressions and provisions of both sections.
The first section says, the Court shall *admit* the minor of the
age of fourteen to make choice, &c.    Now it is under this sec-
tion, if at all, that minors, having guardians, may, when they at-
tain that age, have the right to choose others ; and, at most, they
are admitted to do so.    The Court is not required to call upon
them to make a choice, nor is the Court authorized, in case they
do not choose, to make appointments, as is provided for another
class of cases in the next section.    So that, unless the old guar-
dian holds over, the minor will be without a guardian, until the
infant shall appear in Court and make a choice.    We think it is
manifest that the second section was never intended to embrace
a case where a guardian had once been appointed.    That sec-
tion provides, that whenever it shall be represented to the Court
that there is, within the county, an orphan minor, over the age
of fourteen years, who has not a guardian, he shall be notified
to appear and choose a guardian ; and if he does not do so, the
Court shall appoint a guardian for him, " as if said minor were
under the age of fourteen years."    This evidently contemplates
a new case, of which the Court has had no previous jurisdiction
or knowledge ; and it even seems to require the representation of
a third person to set the Court in motion, and is not a case where
the minor has been under the supervisory control of the Court.
Under this section, if the minor refuse to choose, the Court
shall appoint, as if the infant had not attained the age of choice.
And, in such a case, how long shall the appointment continue ?
In terms, at least, until the minor shall attain his majority, and
undoubtedly the guardian might continue till that time, unless
the infant should sooner choose another, if he should be held to
have that right.    If such must be the terms of such an appoint-
ment, why should they be variant, where the infant is under four-
teen, when the statute says that the appointment, in that case,
shall be the same as in this?    We entertain no doubt, that it
was the intention of the Legislature that a guardian appointed
for an infant under the age of fourteen, should continue in his

appointment after that time, unless superseded by one selected by the infant himself. There are no terms of limitation in the act, and nothing from which a necessary limitation can be inferred. At most, we may infer that the Legislature intended to admit the ward to choose another, if he should see fit to exercise that right. And the policy of such a provision cannot be doubted. By this construction, no interregnum would occur, either from necessity or inadvertence, and it is the policy of the law that every infant shall be constantly provided with a guardian, to take care of his person and to superintend his estate. We have not thought it necessary to go into an examination of the learning displayed at the bar, relating to the different kinds of guardians known at the common law, and their incidents, rights and duties, nor yet to review the decisions of the Courts of other states—all made upon statutes materially differing from ours, for, at last, we should return from our research with but little light to aid us in the construction of our own statutes, and it is upon that the decision of the question must at last depend.

We hold, then, that Drum was the legal guardian of these minors, and we will address ourselves to the examination of the third objection, which, to our apprehension, presents more difficulties. This relates to the proceedings before the Circuit Court which granted the order under which the premises were sold. This proceeding was under the tenth section of the statute already referred to, which provides, that "the Circuit Court may, for just and reasonable cause, being satisfied that the guardian has faithfully applied all the personal estate, order the sale of the real estate of the ward, on the application of the guardian, by petition, in writing, stating the facts," &c. That section, after providing for the notices, proceeds, "such order may enable the guardian to sell and convey the real estate, for the support and education of the ward, or to invest the proceeds in other real estate." This is a proceeding not according to the course of the common law, but is a special jurisdiction, conferred by the statute, and, although in a Court of general common law and chancery jurisdiction, yet when the Court undertakes to exercise this extraordinary jurisdiction, which is not in conformity to either, it must appear upon the face of the record or proceeding itself, that the contingency existed, or at least, was alleged, which au-

thorized it to proceed under the statute, and make the order. Upon a cursory examination of the many decisions which were produced upon the argument, where this question has been elaborately discussed by learned Courts, great incongruity might be supposed to exist in the opinions of different judges, yet upon a more studied investigation, it will be found that they all agree in stating substantially the same rule, and the apparent discrepancy will be found to have originated in the fact, that the force of the argument is always directed either for or against the jurisdiction, according as the decision may be one way or the other. They all agree that enough must appear, either in the application or the order, or, at least, somewhere upon the face of the proceeding, to call upon the Court to proceed to act; and all agree, that when that does appear, then the Court has properly acquired jurisdiction, or, in other words, is properly set to work. When the jurisdiction is thus established, and the Court is authorized to hear, it follows, as a necessary consequence, that it is authorized to adjudge, and that judgment being thus entered by authority of law, no matter how erroneous it may be, or even absurd—though it be made in palpable violation of the law itself, and manifestly against the evidence—is, nevertheless, binding upon all whom the law says shall be bound by it, that is, upon all parties and privies to it, until it is reversed in a regular proceeding for that purpose. While it remains a judgment, it cannot be inquired into, nor its regularity questioned, in any collateral proceeding. In another action the inquiry is not whether the Court acted properly, but had it a right to act at all? Was the judgment rendered in the exercise of an usurped power, or of a conferred authority? If the former, the whole proceeding is utterly void, every where. If the latter, it is always obligatory, till reversed. The rule, then, is a very simple one, and, ordinarily, of easy application. The inquiry is not whether the proof was sufficient, but was such a case presented to the Court as called upon it, under the statute, to act, to deliberate, and to decide? Was its aid properly invoked? If so, then the Court acted within its jurisdiction, and every presumption is in favor of its judgment. Indeed, nothing can be alleged against it now.

This statute is far from possessing that clearness, or even consistency, in reason and expression, which might be desired in one of its character and importance; still we must give it the

most reasonable construction of which it will admit, endeavoring, on the one hand, to prevent the rights of infants from being wantonly sacrificed, in violation of the law, and, on the other, to protect the rights of innocent purchasers, when acquired in good faith, under the law. The statute sets out with authorizing the Court, "for just and reasonable cause, being satisfied that the guardian has faithfully applied all the personal estate," to order the real estate to be sold; and in a subsequent part of the section, it provides that the sale may be ordered for either of two purposes: first, for the support and education of the ward, and, second, that the proceeds of the sale may be invested in other real estate. Now, by the literal expressions of the act, it might seem that the personal estate must be exhausted before a sale could be ordered, where the sole object was to invest the proceeds in other real estate, but we can hardly believe that such could have been the design of the Legislature, for, certainly, the existence of personal estate could have nothing to do in determining the question whether the interest of the ward would be promoted by a change of the investment in real estate. It would seem to be more reasonable to suppose that the "just and reasonable cause," which is required to be shown, and the facts of which the statute requires to be stated in the petition, should govern the Court in determining whether the interest of the ward required a change of the investment, without regard to the existence of personal estate. But it is unnecessary to discuss the difficulties which may be found in that part of the statute, or to undertake to explain them, for in this case the application for the sale was not made for the purpose of investing the proceeds in other real estate.

After stating the guardianship, and that the premises belonged to the wards, the petition shows, "that at the time of the said appointment, nor at any time since, has there come into the hands or possession of your petitioner any personal property of his said wards," and "that there is no money, personal property, or means in his hands, for the further support, maintenance or education of his said wards; and that it has, therefore, become necessary, for their support and education, and will be conducive to their interests, to have the same, or some part thereof, sold," &c. These are the reasons, and these the purposes, for which an order for the sale of these premises was asked; and

the sufficiency of these is not impaired by the further statement, that the guardian had already made large advances out of his own funds, for their support and maintenance, and that there were no means for reimbursing him. The petition does not ask that any portion of the proceeds of the sale should be applied in payment of those advances. In the prayer of the petition, the Court is asked to order a sale of the property, " for the support and education of his said wards," and no other purpose is expressed, either in the petition or in the order of the Court. This petition, the averments of which the Court found to be true, states every thing which the statute requires to give the Court jurisdiction, except that instead of averring " that the guardian has faithfully applied all the personal estate," it states that no personal property of the wards had ever come to his hands. We do not think this departure from the expressions of the statute fatal to the jurisdiction of the Court, although it must be admitted that the averment is somewhat equivocal. The meaning of the statute is, that the guardian should have faithfully applied all of the accessible personal estate ; and we are disposed to hold that the averment here was equivalent to that ; for if there never was any personal estate, that statement must be equally satisfactory. The statute undoubtedly requires the guardian faithfully to seek for personal estate, and the Court should refuse an order of sale, if it appears that there was personal property which the guardian might have made available, by the exercise of proper diligence, and which, by his neglect, he has not obtained and applied. It is true, that such may have been the case here, but we do not think that we ought to intend that it was so, for the purpose of denying the jurisdiction of the Court, and defeating the titles acquired by the purchasers. We are of opinion that the order of the Court, directing the sale of these lots, was valid, and that it cannot be impeached in this collateral action.

Several objections were taken to the notices of the sale and other matters involved in the adjudication of the Circuit Court, either in granting the original order of sale, or in the final order, confirming the report of the guardian ; but they can avail nothing. That Court having had jurisdiction to hear and determine, it cannot be permitted now to deny that it proceeded properly and determined correctly. And as to the proceedings in *pais*,

as the posting of the notices of the sale, there are several cases which were referred to on the argument, deciding directly that the same presumption applies to them. The objection, that the report of the guardian was not confirmed by the Court, cannot be sustained. The order made upon the return was a substantial and sufficient confirmation.

There are two supposed ambiguities in the conveyance executed by the guardian. First, the grantees are described as " Lorain &c.; " also, the premises are imperfectly described, the number of the block having been omitted. Admitting that there is more than one block in the town with lots bearing the same numbers as these, then here is a latent ambiguity. Parol evidence was competent, in either event, to have remedied the defect, and such proof was adduced, showing who the grantees were. In order to explain the second, a mortgage was offered in evidence, dated the 22d of April, 1843, executed by the defendants to Thomas Drum, and also the entry of satisfaction of the mortgage, dated the 23d of May, 1844. These were objected to, admitted, and an exception taken. This evidence was improperly admitted. It was not shown to have had any connection whatever with the deed, to explain which it was admitted. Although it describes the same premises as the deed, with the addition of the block, and corresponds with it in date, and may be for the balance of the purchase money due at the time the mortgage bears date, yet that did not prove that it was given for the security of the balance of the purchase money; and, above all, it did not prove that this mortgage was upon the same property which was sold by the guardian. It does not even appear that the mortgage was given to Drum, as guardian. On its face it was a private matter of his own, and there is nothing to show that it was otherwise. Also, for the purpose of explaining the first deed, a subsequent one was offered, executed by Drum to the defendants, dated on the 23d of January, 1847. This deed, which professes to be executed for the purpose of correcting the mistakes in the first deed, gives the proper names of the grantees, and describes the property in controversy. This deed, we also think, was improperly admitted in evidence. At most, it amounted to the declarations of Drum, made some years after the transaction, and when he could not, by such declarations, affect the interests of his wards. If it was designed as a confirmatory

conveyance, it was equally improper, for it was made at a time when he was not authorized to convey, or do any act affecting the first conveyance. After his report of the sale had been approved by the Court, thereby giving effect to the sale and conveyance which he had made under the order of the Court, his power was exhausted, so far as it related to that sale and conveyance. His authority to make that conveyance was derived from the order of the Court. That order constituted his warrant of attorney. By that order he was made the agent of the law, and when he had fulfilled that appointment to the satisfaction of the Court, and his acts were approved, his authority, thereby conferred, was exhausted, and his agency was determined, and any act of his, relating to that appointment, done afterwards, was void.

The only remaining question, which we deem it important to notice, arises under the assignment of error, which questions the finding of the Court upon the evidence before it. The title shown by the plaintiffs was a patent from the United States, dated the 12th of September, 1845, granting the premises in question to them, by the description of Elizabeth and Julia Ann Bates, heirs at law of Nehemiah Bates, deceased. This patent, it will be observed, bears date subsequent to the accruing of the title under which the defendants claim the premises; and there is no evidence in the case, showing that whatever interest the plaintiffs may have had in the premises, at the time of the sale under the order of the Court, had any connection with the title subsequently acquired from the government. There can be no just grounds for saying that an independent title, subsequently acquired by the ward, inures to the benefit of a previous purchaser at a guardian's sale. The ward cannot be estopped by the guardian's deed from setting up such subsequent title. The guardian can insert no covenants in the deed, which are binding upon the ward. Mason *vs.* Caldwell, 5 Gilman, 196. And, hence, there can be nothing in the deed which can operate by way of estoppel. If the guardian chooses to insert covenants in the deed, he may be held personally responsible upon them, and to him alone must the grantee look for redress. Whiting *vs.* Dewey, 15 Pick. R., 428. It was insisted upon the argument, that the patent was issued upon an entry which was made by or for the patentees, anterior to the proceedings in the Circuit

81

Court, which resulted in the sale of their interest in the premi-
ses, by the guardian.   If this be so, then, indeed, as the patent
was but the perfection of a title, which, in fact, had previously
accrued, and which, by our statute, is regarded as a legal and
disposable title, we have no doubt that the patent could not be
used to defeat the estate previously acquired.   But there is no
sufficient evidence in this record, showing that such was the
case, and certainly the Court could not presume that it was so,
without evidence.   As the case stood, the plaintiffs were entitled
to a verdict upon the evidence.

The judgment of the Circuit Court is reversed, with costs,
and the cause remanded for further proceedings.

*Judgment reversed.*