## Wallace C. Abbott, Defendant in Error, v. Carl A. Anderson et al., Plaintiffs in Error.

### Gen. No. 18,630.

1. BANKRUPTCY, § 59*—*when discharge of partnership in bankruptcy releases individual partners.* Where a bankruptcy court adjudicated a partnership a bankrupt without adjudicating as bankrupts the individual members thereof or requiring them to file schedules of their individual property and entered a judgment confirming a composition agreement whereby the partnership creditors were paid seventy-five cents on the dollar, *held* that not only was the indebtedness of the partnership discharged but the individual partners were also discharged from the payment of such indebtedness, and that the partnership creditors had no right to pursue the

*See Illinois Notes Digest, Vols. XI to XV, same topic and section number.

adjudicated partners by actions at law or in equity to recover the deficiency upon their claims.

2. BANKRUPTCY, § 54*—*conclusiveness of judgment of bankruptcy court.*  A judgment of a bankruptcy court adjudicating a partnership a bankrupt and confirming a composition agreement without adjudging the members of the partnership individually bankrupt is *res adjudicata* until reversed in a direct proceeding, and cannot be collaterally attacked as not being a valid discharge of the partnership without an individual adjudication in bankruptcy of the members thereof.

3. BANKRUPTCY, § 55*—*effect of interlocutory order as construing decision of bankruptcy court.*  On adjudication of a partnership as a bankrupt, an interlocutory order of the bankruptcy court approving a referee's report recommending that a proviso to the composition agreement should be withdrawn because it deprived creditors of the right to proceed against the individual partners for deficiencies, is not conclusive to show that the court decided that the partners were to remain individually liable.

4. ESTOPPEL, § 6*—*when acts of parties in bankruptcy do not create an estoppel.*  Where upon the adjudication of a partnership in bankruptcy the referee's report recommended that a proviso to the composition agreement should be withdrawn to give partnership creditors the right to proceed against the individual partners for deficiencies, and the court by an interlocutory order approved such report, *held* that the fact that the partners withdrew such proviso did not estop them from denying their individual liability for the deficiencies.

5. INJUNCTION, § 15*—*when issues to restrain suits against partners discharged in bankruptcy.*  Permanent injunction will issue to restrain partnership creditors from bringing suits against individual copartners released from payment of partnership debts by a discharge of the partnership in bankruptcy.

Error to the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1912. Affirmed. Opinion filed January 22, 1914. *Certiorari* granted by Supreme Court.

**Statement by the Court.**  Plaintiffs in error, defendants below, seek by this writ to reverse a decree of the Circuit Court of Cook county, entered March 21, 1911, by which they were perpetually enjoined from further prosecuting certain suits severally brought by them in the Municipal Court of Chicago, and from be-

*See Illinois Notes Digest, Vols. XI to XV, same topic and section number.

ginning any suits at law or in equity against the defendant in error, complainant below, for the recovery of any indebtedness which they or any of them, as creditors of the Ravenswood Exchange Bank, a copartnership, claimed to be due from complainant as a former member of said copartnership.

Complainant's amended bill was filed on January 23, 1909, and complainant alleged therein, in substance, that on and prior to February 25, 1908, complainant and nine other individuals were associated together as copartners in conducting a banking business at Ravenswood, Chicago, under the name and style of "Ravenswood Exchange Bank;" that the number of the depositors in the bank exceeded 2,000; that on said date certain of those depositors, exceeding three in number and whose claims in the aggregate exceeded $500, etc., filed a petition in bankruptcy in the United States District Court for the Northern District of Illinois, Eastern Division, against complainant and said nine others, "copartners, trading as Ravenswood Exchange Bank," alleging that they were insolvent and that they, as such copartners, had committed certain acts of bankruptcy, and praying for the service of a subpoena upon them and that the "copartnership" might be adjudged bankrupt; that thereafter complainant and said nine others duly appeared in said proceedings and on March 31, 1908, by order of said court, complainant and said nine others, "copartners, trading as Ravenswood Exchange Bank," were "declared and adjudged bankrupt;" that thereafter, at the first meeting of the creditors of said copartnership, complainant and said nine others were examined in open court and they filed in court a schedule of property and a list of creditors; that thereafter complainant and said copartners offered terms of composition to the creditors of said copartnership, to wit, an amount sufficient to pay all of them seventy-five cents on the dollar of their respective claims; that said offer of composition was thereafter duly accepted in writing by

a majority in number of all the creditors of said co-partnership whose claims were allowed, which number represented a majority in amount of such claims; that application was thereafter made for the confirmation of said composition, to which objections were filed and a hearing thereupon had; that thereafter on June 10, 1908, an order was entered by said United States Court confirming said composition, and that the consideration for said composition was duly deposited in court, and said composition is now in full force and effect; that all of the creditors of said copartnership, including the defendants, have been paid the full amount of seventy-five cents upon the dollar of their respective claims pursuant to the terms of said composition; that by virtue of the Bankruptcy Act of 1898, and the amendments thereto, upon the confirmation of said offer of composition, the bankruptcy proceedings terminated and all of the indebtedness of the partnership was discharged and wiped out, and that complainant and his copartners were also individually discharged from the payment of the indebtedness of said copartnership.

The complainant further alleged in said bill, in substance, that notwithstanding the fact that complainant and his copartners, by virtue of said bankruptcy proceedings, had been discharged from all liability for the indebtedness of the copartnership, certain of the defendants to this bill, who were depositors in said bank on and prior to said February 25, 1908, have recently brought separate and independent actions at law against complainant and said copartners in the Municipal Court of Chicago, seeking thereby to recover the balance of twenty-five per cent. of their respective original claims against said Ravenswood Exchange Bank; that all of the creditors who have so commenced said suits appeared in said bankruptcy proceedings and proved their claims and received in full their respective dividends by virtue of said composition; that other defendants to this bill have threatened to bring

suits at law of like character against complainant and said copartners, and complainant fears that these threats will be carried into execution; that the suits pending involve the sum of about $3,000, and that the claims of the other defendants who are threatening suit amount to about $15,000; that the respective claims of all of the defendants were filed in said bankruptcy proceedings and were allowed and said allowance constitutes an adjudication as to the respective amounts thereof; that the sole question of law involved in all of said suits at law, those brought and those threatened to be brought, is the *effect* of said judgment of said bankruptcy court confirming said composition, as to complainant and said copartners, upon the indebtedness of said copartnership firm, and that to prevent needless expense and a multiplicity of suits a court of equity should decide the question. The complainant offered to indemnify the defendants against any loss and damage which they might suffer by reason of delay in case of their being enjoined from prosecuting or bringing said suits until the determination of the present suit, and further offered, in case the court should find him liable to the defendants, to pay any amount decreed to be due from him. The bill prayed that the defendants and all other depositors of said Ravenswood Exchange Bank might be restrained from prosecuting or bringing said suits; that the claims of said defendants and all other depositors might be decreed to have been wholly discharged by virtue of the confirmation of said composition, and that said defendants and all other creditors of said bank be required to litigate in this suit the question of the liability of complainant and his copartners to them, etc.

Demurrers to the bill were overruled, but no point is now here made that said Circuit Court erred in not dismissing the bill on the ground that the defendants were entitled to a trial of the issues in a court of law. One of the defendants, Carl A. Anderson, filed a lengthy answer to the bill, which answer was adopted

by the other defendants, and the cause was put at issue.

It appears from the evidence, heard in open court before the chancellor, that the Ravenswood Exchange Bank was a joint stock association, or copartnership; that prior to the filing of said petition in bankruptcy a receiver was in charge of the assets of the bank, appointed by order of the Circuit Court of Cook county on or about November 12, 1907; that after the filing of said petition the administration of the affairs of the bank was transferred from said Circuit Court to said United States Court; that when said petition was filed the complainant and said nine others were the only shareholders or copartners of the bank, called "present partners"; that prior to the appointment of said receiver in November, 1907, there had been other shareholders, called "past partners," who had retired from the copartnership by the transfer of their shares of stock; that after the appointment of said receiver an attempt was made by said past and present partners to bring about a common law composition with the creditors of the bank; that a certain Realization Company agreed to assist in bringing about such a settlement but required that large contributions be made to it in cash; that several of said past partners, under the belief that they might be held to some extent liable with the present partners for the indebtedness of the bank, made contributions to this fund; that the effect of the filing of said petition in bankruptcy was to retard but did not terminate the efforts of said Realization Company to bring about a composition with the creditors of the bank, and that through its efforts and assistance the money necessary to be deposited for said bankruptcy composition was deposited in court, the Realization Company taking as security for the money advanced by it a conveyance of the assets of the bank.

It further appears from the evidence, or from the stipulations of respective counsel in evidence, that

after complainant and said nine others, "copartners trading as Ravenswood Exchange Bank," had been by the court adjudged bankrupt, from which judgment no appeal was taken, they were, at the first meeting of the creditors of said copartnership, examined as to the copartnership assets and liabilities, and also as to their individual assets and liabilities, and that schedules of the property of the copartnership and a list of the creditors thereof were filed; that these schedules did not contain, or purport to contain, any of the individual property of said copartners, and that none of said copartners at any time either filed or offered to file schedules of their individual property or a list of their individual creditors, and that no attempt was made by defendants or any of the creditors of said copartnership to compel them so to do, and that neither complainant nor any of his copartners were at any time *individually* adjudged bankrupt. It is not disclosed from the evidence whether, from said examination of said copartners at said first meeting of the creditors of the copartnership, it was ascertained that the assets of the copartnership, plus the individual assets of the copartners in excess of their individual debts, were sufficient or insufficient to pay the partnership debts. A stipulation by counsel is in evidence that, pending the hearing of the offer of composition, complainant was further examined, and from all examinations it appeared that "a few of said individual partners, including complainant, were men of some pecuniary means individually." It further appears from the evidence that on April 17, 1908, the "Ravenswood Exchange Bank, the above named bankrupt," offered to its creditors terms of composition, whereby it agreed to pay or cause to be paid to its creditors, upon such composition being confirmed by the court, seventy-five per cent. of their respective claims, together with all costs and expenses of administration in the United States Court and in said Circuit Court, but said offer contained a proviso that "said creditors and

each of them do expressly accept said composition payment in full satisfaction and discharge * * * of their several respective claims against said Ravenswood Exchange Bank, *or against any of its past or present members, stockholders, shareholders, officers and directors."* On April 20, 1908, the bankrupt firm filed a petition praying that said offer of composition be confirmed. This petition was referred to Referee Eastman, as a special master, and he was directed to give notice to the creditors, to hear any objections which might be filed, and to take proofs and to report his conclusions and recommendations to the court. Some of the defendants to the present bill filed written objections to the confirmation of said offer to the effect that, inasmuch as no one of said copartners as to his individual estate had been adjudicated a bankrupt, the court had no jurisdiction over the individual estates of the copartners, or, in other words, had no jurisdiction of any of the "past or present members, stockholders," etc., and was, therefore, without power to confirm the offer of composition as made. On May 12, 1908, the referee, as such special master, filed a lengthy report in which, in conclusion, he recommended to the court that the offer of composition "be denied submission unless the bankrupt firm elects, within a reasonable time to be fixed by the court, to strike out from its offer the proviso in question." The referee stated in said report, in substance, that in his opinion, under the authority of the case of *In re Bertenshaw,* 85 C. C. A. 61, 157 Fed. 363, decided November 19, 1907, by the United States Court of Appeals for the Eighth Circuit, a partnership is a distinct entity by reason of the provisions of the Bankruptcy Act of 1898, in other words, a "person" separate from the partners who compose it; that the adjudication in bankruptcy of a copartnership does not draw after it the adjudication of the partners themselves; that a court of bankruptcy has no jurisdiction to summarily take and administer in proceedings against a partnership

the individual estate of the solvent partners without their consent; and that the result is that, upon the approval of an offer of composition by a bankrupt partnership, the partnership creditors have a right to pursue the unadjudicated partners by actions at law and suits in equity in appropriate courts for the deficiencies owing them. The referee further stated in said report that in his opinion the proviso in said offer of composition was unlawful, in that it might possibly deprive "a minority and objecting creditor" of the above mentioned right, which the law gave him, in case the offer of composition was confirmed as made, and that even if the proviso would not militate against objecting creditor's pursuing their remedies to collect their deficiencies, it would at least be a doubtful question as to whether those creditors, who had accepted in writing the offer as made, would not be estopped from suing for their deficiencies, "which would leave the result, if it were so, of two classes of creditors, one with a right of action over to collect their deficiencies and the others without."

On the same day, May 12, 1908, the United States Court entered an order that, upon consideration of the said report of the referee as special master, and after hearing arguments of counsel for the different parties in interest, "said report be approved," and the court further ordered, upon motion of said bankrupt, that "said bankrupt have and leave is hereby given to it to modify its offer of terms of composition heretofore made by withdrawing therefrom and striking out of said offer" the proviso above mentioned.

On the same day, also, the "Ravenswood Exchange Bank, the above named bankrupt," by its attorneys, filed a written modification of its offer of composition, "withdrawing from said offer" the said proviso.

On June 10, 1908, said referee as special master filed in court his final report in which he stated, *inter alia*, that objections had been filed to the composition by many creditors; that certain legal points were pre-

sented by specifications on which elaborate arguments were made by respective counsel; that he had made an "interlocutory report" to the court which report had been confirmed and the offer of composition modified to meet the objections; that thereafter a lengthy hearing was had on the facts, and that "at this time appear the objectors by their counsel and withdraw the further prosecution of their objections and consent to the offer of composition as made." In this report the referee found that the offer of composition had been accepted by a majority in number and amount of creditors whose claims were filed, that sufficient money had been deposited, etc., that it was for the best interests of the creditors that the composition be confirmed, etc. On the same day the United States Court approved this report, entered an order expressly finding that the composition (i. e. as modified) was for the best interests of the creditors, etc., and adjudging that "said composition be and it hereby is confirmed."

The Circuit Court, in the present case, found in its decree that by said order of the United States Court, entered June 10, 1908, the said composition was confirmed and that the same was in full force and effect; that all the creditors of said copartnership, including all of the defendants herein, had received the full amount of seventy-five cents on the dollar upon their respective claims pursuant to the terms of said composition; that upon the confirmation of said composition said bankruptcy proceedings terminated, and that all the indebtedness of said copartnership was discharged and wiped out, and that complainant and his said copartners were also individually discharged from the payment of the indebtedness of said copartnership firm, and that the creditors of said copartnership ceased to have any further claims or demands against it and to have any further claim or demand against any of the individual members thereof, including the complainant, for the copartnership indebted-

ness or obligations; that all of the material allegations of the amended bill were true, that the equities were with the complainant and that the complainant had no adequate remedy at law. The court decreed that the complainant was not indebted to any of the defendants herein, or to any depositor of said bank, arising out of any indebtedness or obligation of said bank to any of the defendants or to any such depositor, and ordered the issuance of the perpetual injunction, as first above mentioned.

HUBERT E. PAGE and NEWTON WYETH, for plaintiffs in error.

HERMAN FRANK and HARRY J. LURIE, for defendant in error.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

Section 14c of the Bankruptcy Act of 1898 provides that "the confirmation of a composition shall discharge the bankrupt from his debts, other than those agreed to be paid by the terms of the composition and those not affected by a discharge." It appears from the evidence in this case that in an involuntary proceeding in bankruptcy on the ground of insolvency the complainant and nine other persons, "copartners trading as Ravenswood Exchange Bank" were, on March 31, 1908, adjudged bankrupt by said United States District Court, that the copartnership subsequently offered terms of composition to its creditors, to wit, seventy-five cents on the dollar of their respective claims, which offer was accepted by a majority of those creditors in number and amount, and that on June 10, 1908, the composition was confirmed by said court. Counsel for defendant, relying on the so-called "entity theory" of a partnership and particularly on the case of *In re Bertenshaw*, 85 C. C. A. 61, 157 Fed. 363, contend that a partnership can be adjudged a bankrupt and dis-

charged in bankruptcy without the adjudication indi-
vidually of the members composing that partnership,
and that in such case said members will not be indi-
vidually discharged from the partnership debts. And
counsel argue that, in the present case, where it ap-
pears from the evidence that complainant and a few
of his partners were men of some pecuniary means
individually and none of them were *individually* ad-
judged bankrupt and none of them either filed or
offered to file schedules of their individual property
or a list of their individual creditors, and where it fur-
ther appears that an offer of composition was made
by the partnership, Ravenswood Exchange Bank, and
confirmed by the bankruptcy court, the *effect* of that
judgment of confirmation is not to discharge complain-
ant and his partners from the debts of the partnership,
but that they are still liable to each creditor of the
partnership for the amount of his claim less the sum
received by virtue of said composition proceedings, and
that the Circuit Court erred in entering the decree in
this case. Counsel for complainant contend on the
contrary that a discharge in bankruptcy of a partner-
ship, whether by way of composition or otherwise,
operates not only to release the partnership but also
the individual partners from the debts of the partner-
ship, and that in this case complainant and his co-
partners are now under no liability to the defendants,
and that the decree should be affirmed.

Shortly before the bankruptcy proceedings in ques-
tion were commenced, the case of *In re Bertenshaw,*
85 C. C. A. 61, 157 Fed. 363, was, on November 19,
1907, decided by the United States Court of Appeals
for the Eighth Circuit. The exhaustive opinion of the
court was written by Judge Sanborn; and it was
therein decided, as we read that opinion, that under
the Bankruptcy Act of 1898 a partnership is a dis-
tinct entity, i. e. a "person," separate from the part-
ners who compose it; that the partners and their in-
dividual property are to a limited extent sureties for

the debts of the partnership; that the partnership may be adjudged bankrupt although the partners who compose it are not individually so adjudicated; that in such event the individual estate of a solvent partner is not drawn into the proceedings, and the bankruptcy court is without jurisdiction to summarily take and administer in the proceedings against the partnership such individual estate without that partner's consent; that in such event, also, the partnership creditors may pursue unadjudicated partners by actions at law and suits in equity before, during and *after* the proceedings in bankruptcy against the partnership; and that the discharge of the partnership, where the partners are not individually adjudged bankrupt, does not discharge the partners from their liability for the debts of the partnership. In the dissenting opinion of Judge Hook it was stated that portions of the majority opinion were at variance with principles enunciated in the prior cases of *Dickas v. Barnes,* 72 C. C. A. 261, 140 Fed. 849; *In re Meyer,* 39 C. C. A. 368, 98 Fed. 976, and *In re Stokes,* 106 Fed. 312. And we think that portions of said majority opinion were also at variance with principles enunciated in the other prior cases of *In re Forbes,* 128 Fed. 137, 139, and *Vaccaro v. Security Bank of Memphis,* 43 C. C. A. 279, 103 Fed. 436, 442.

About two weeks before the decree in the present case was entered by the Circuit Court of Cook county, the opinion of the United States Court of Appeals, for the Third Circuit, in the case of *Francis v. McNeal,* 108 C. C. A. 459, 186 Fed. 481, was on March 7, 1911, filed. In that case, in the District Court, a partnership had been adjudicated a bankrupt. Francis there contended that he was not a partner but the court after a hearing found otherwise. On petition of the trustee in bankruptcy, the District Court entered an order, adjudging that Francis' separate estate was subject to administration by the trustee of a bankrupt partnership and directing him to deliver his property to the

trustee for the purpose of such administration. This order was affirmed by the Court of Appeals, and in the course of its opinion the Court said (p. 484): "If the act charged be one involving insolvency, since every partner is liable in solido for all the partnership debts, the adjudication against the partnership must be based on allegations and proof that the assets of its members, in excess of their individual debts, plus the assets of the partnership, are insufficient to pay the partnership debts. Otherwise there is no partnership insolvency, notwithstanding the entity doctrine." (Citing cases.) And the Court further said (p. 485, italics ours): "In an involuntary proceeding, where the act of bankruptcy charged is one that does involve insolvency of the partnership, there can be no adjudication against the partnership, unless it and all its members are insolvent; and that in such a case, though the adjudication be against the partnership only, or against the partnership and some, but not all, of its members, *the estates of all the members are drawn into the proceeding for administration.*" One of the cases cited in the above opinion was that of *In re Forbes, supra.* In this case Judge Lowell, of the United States District Court for Massachusetts, said (128 Fed. 137, 139, italics ours): "The equal and equitable distribution of the estates of insolvents *and their discharge* from the obligation of their debts are the ends sought by proceedings in bankruptcy. Bankruptcy, without insolvency, actual or presumed, is almost inconceivable. Bankruptcy without discharge for the honest debtor is a contradiction in terms. It is impossible to declare a partnership insolvent so long as the partners are able to pay its debts and theirs, whether out of joint or separate estate. * * * Not the insolvency of any imaginary entity, as in the case of a corporation, but the insolvency of its human component parts, lies at the foundation of the bankruptcy of a partnership. * * * As the bankruptcy of a partnership begins with an inquiry into the condition *of its individual*

*partners, the end of the proceedings is normally their discharge.* So far as I know, the discharge of a partnership as an entity has never been suggested, and what would be the effect of such a discharge can hardly be imagined. Herein appears the difference between a partnership and a corporation. Under an adjudication merely joint, it is impossible to discharge the partners as individuals, even from their joint debts, for every joint debt of the partnership is also a separate debt of each partner, and separate debts can be discharged only after an individual adjudication operating upon the separate estate.''

The case of *Francis v. McNeal* was taken to the Supreme Court of the United States and that court affirmed the decisions of the District Court and the Court of Appeals. In the opinion, filed May 26, 1913 (228 U. S. 695), Mr. Justice Holmes referred to the opinion of Judge Lowell in the *Forbes* case, *supra,* as an ''able opinion'' and stated that, so far as the *Vaccaro v. Security Bank* case, *supra,* was inconsistent with the opinion of the majority in the *Bertenshaw* case, *supra,* he regarded the former ''as sustained by the stronger reasons and as correct.'' The learned Justice further said (p. 699, italics ours): ''The notion that the firm is an entity distinct from its members has grown in popularity. * * * But the fact remains as true as ever that partnership debts are debts of the members of the firm, and that *the individual liability of the members is not collateral like that of a surety, but primary and direct,* whatever priorities there may be in the marshalling of assets. The nature of the liability is determined by the common law, not by the possible intervention of the Bankruptcy Act.'' He further said (p. 701): ''It would be an anomaly to allow proceedings in bankruptcy against joint debtors from some of whom, at any time before, pending, or after the proceeding, the debt could be collected in full. If such proceedings were allowed it would be a further anomaly not to distrib-

ute all the partnership assets. Yet the individual estate after paying private debts is part of those assets so far as needed. Section 5f. Finally, *it would be a third incongruity to grant a discharge in such a case from the debt considered as joint but to leave the same persons liable for it considered as several.* We say the same persons, for however much the difference between firm and member under the statute be dwelt upon, *the firm remains at common law a group of men and will be dealt with as such in the ordinary courts for use in which the discharge is granted."*

It thus appears that some of the principles enunciated in the *Bertenshaw* case, *supra,* upon which case counsel for defendants rely to support their contention, are not sustained by the current of authority or by the recent decision of the Supreme Court of the United States in the case of *Francis v. McNeal, supra.*

Counsel for defendants further contended during the oral argument before us that, if the entity theory of a partnership to the extent as urged by them must be given up, there can be no *valid* discharge of a partnership firm without an *individual* adjudication in bankruptcy of the members thereof. Counsel direct our attention to the statement contained in the opinion in the *Forbes* case, *supra,* that "under an adjudication merely joint it is *impossible* to discharge the partners as individuals." In our opinion this position amounts to a collateral attack on the judgment of the bankruptcy court confirming the composition and is untenable. The bankruptcy court had *jurisdiction* to enter the order, even admitting for the sake of the argument only, that it may have *erred* in so doing without previously having adjudged the members of the partnership individually bankrupt. No appeal was taken from that order and, until reversed in a direct proceeding, it is *res adjudicata. Young v. Lorain,* 11 Ill. 624; *People v. Seelye,* 146 Ill. 189, 221; *Sumner v. Village of Milford,* 214 Ill. 388, 393; *Waller v. Village of River*

*Forest,* 259 Ill. 223, 230. A certified copy of the order
was introduced in evidence in the present case. And
by section 21f of the Bankruptcy Act it is provided
that "a certified copy of an order confirming or set-
ting aside a composition, * * * not revoked, shall
be evidence of the jurisdiction of the court, the *regu-
larity of the proceedings,* and of the fact that the order
was made."

Our conclusion, therefore, is that the Circuit Court
did not err in finding in its decree that by said order
of the bankruptcy court complainant and his copart-
ners were released from the payment of the indebted-
ness of the copartnership, Ravenswood Exchange
Bank, and in issuing the permanent injunction men-
tioned. By section 14c of the Bankruptcy Act the or-
der confirming the composition discharged "the bank-
rupt from his debts," and as stated in the Supreme
Court opinion in *Francis v. McNeal, supra,* "the firm
remains at common law a group of men and will be
dealt with as such in the ordinary courts for use in
which the discharge is granted." And while it is pro-
vided by section 16 of the Bankruptcy Act that the
liability of a person "in any manner as surety for a
bankrupt" shall not be altered by the discharge of
such bankrupt, it is decided in said *Francis v. McNeal*
case that the individual liability of the members of
the firm "is not collateral like that of a surety, but
primary and direct."

But counsel for defendants further contend that the
question, whether complainant and his copartners
after confirmation of the composition would remain in-
dividually liable to the defendants for the deficiencies
on their respective claims, was decided by the bank-
ruptcy court, that that decision was that the partners
would remain so liable, and that, no matter how erro-
neous the same may have been, no appeal having been
taken from it, the decision is now *res adjudicata.*
Counsel's argument, as we understand it, is to the ef-
fect that the original offer of composition contained

the proviso that the acceptance of the offer would discharge the past and present partners; that objections to the offer were made by some of the present defendants; that after a full hearing the special master reported to the bankruptcy court, recommending that the offer be denied submission unless the bankrupt firm would withdraw the proviso; that in said report the master stated certain reasons for his recommendation, and further stated that in his opinion, upon the confirmation of the offer of composition of the firm, the creditors of the firm could collect the deficiencies on their claims from the individual partners; that on May 12, 1908, this report was approved by order of the bankruptcy court; that the court gave the bankrupt firm leave to withdraw the proviso; that the bankrupt firm did not appeal from this ruling but on the contrary withdrew the proviso, thereby acquiescing in the ruling of the court and thereby acknowledging that a confirmation of the composition offer as modified would not release the partners of the firm from their individual liability for the deficiencies on the claims of the firm's creditors; and that, hence, the partners are now *estopped* by the judgment of the bankruptcy court from denying their individual liability for said deficiencies.

We cannot agree with counsel's contention. The order of May 12th of the bankruptcy court was not a final order but an interlocutory one, and it did not purport to decide the question here involved. "The character of conclusiveness, by way of estoppel, attaches only to final judgments, not to interlocutory judgments or orders, which remain under the control of the court, except where they dispose finally of some distinct branch or part of the case, or are appealable as being orders affecting the substantial rights of the parties." (23 Cyc. 1232.) All that the master said in the report as to his opinion of the law was not so decided by the court (23 Cyc. 1227). Furthermore, we do not think the order was an appealable one (*In re*

*McVoy Hardware Co.,* 119 C. C. A. 337, 200 Fed. 949). And no investigation had then been made by the judge to determine whether or not he was satisfied that the composition was for the best interests of the creditors, or satisfied as to the other matters mentioned in section 12d of the Bankruptcy Act. The judge did not determine that he was satisfied as to these matters until after the filing of the master's final report on June 10, 1908. Furthermore "the *right* to a discharge, and the *effect* of a discharge, are wholly distinct propositions. The proper time and place for the determination of the *effect* of a discharge is when the same is pleaded or relied upon by the debtor as a defense to the enforcement of a particular claim. The issue upon the *effect* of a discharge cannot properly arise or be considered in determining the *right* to a discharge." (*In re Marshall Paper Co.,* 43 C. C. A. 38, 102 Fed. 872, 874.)

And we do not think that under the facts of this case the complainant and his copartners are estopped, under the doctrine of equitable estoppel, from taking the position that they were, by said order of the bankruptcy court of June 10, 1908, released from the claims of the defendants against said copartnership, which claims were proved in said bankruptcy proceedings. One of the essential elements in equitable estoppel is that the party claiming the estoppel must have relied and acted to his prejudice upon an act, representation or promise of the other party. Counsel for defendants contend that, after the bankruptcy court had approved the special master's report of May 12th, and after the proviso to the offer had been withdrawn, the defendants, relying upon the order of the court granting leave to the bankrupt to withdraw the proviso and also relying upon that withdrawal, thereupon withdrew their objections to the confirmation of the composition to their prejudice. A sufficient answer to this is, we think, that there is nothing in this record to show that the bankruptcy court would not have confirmed the

composition offer as modified, the same having been accepted by a majority in number of the creditors whose claims had been allowed and of such allowed claims, even if said objections of the defendants had not been withdrawn.

The decree of the Circuit Court is affirmed.

*Affirmed.*